Roch Du Sauzay *et al. v.* Joseph Du Sauzay *et al.*

[63 South. 273.]

WILLS.  *Nature of instrument.  Intention of maker.*

> Under the facts and circumstances surrounding the execution of the instrument set out in the opinion of the court, it is held that the writing was not intended as a will, but only as an expression of the maker's wishes, as to the disposition of her property in case her husband should survive her, and that the instrument was not entitled to probate as a will.

APPEAL from the chancery court of Hancocke county. HON. T. A. WOOD, Chancellor.

Suit by Roch Du Sauzay and others against Joseph Du Sauzay and others to have a will declared void and for a division of the property among the heirs. From a decree denying the prayer of the bill, complainants appeal.

The facts are fully stated in the opinion of the court.

*Denny & Denny,* attorneys for appellants.

*W. J. Gex,* attorney for appellees.

Cook, J., delivered the opinion of the court.

To properly understand the circumstances surrounding Mrs. Reine De Montluzin when she wrote the instrument propounded for probate as her last will and testament, we think it important to consider the will of her husband, which is as follows:

"This day, the first of June, eighteen hundred and ninety-five.

"I the undersigned Louis Adrienne De Montluzin (Du Sauzay), sound of mind and body, but having reached an age where we cannot and ought not to count on the morrow, desire to express and in fact express my last wishes, as follows:

"I give and bequeath all of my property to my beloved companion, of my entire life, my legitimate wife, born Reine Hallny, all the goods, movable and immovable, that I possess and may possess at the hour of my death, without necessity of making any inventory or furnishing any bond of any kind. I desire at my death that she take immediate possession of all the property that I may leave, without any legal intervention. I make exception to this universal (or entire) bequeath of all my property, only in favor of my two sons, Joseph Alfred and Jean Rene Gabriel, to which I bequeath in remuneration justly due, all services which they have rendered to their mother and to me, the pharmacy and the lands on which it stands, and being the land purchased from John V. Toulme, on the express condition that they shall make to their mother a gift during her life of thirty dollars per month.

"Should they fail to comply with this condition, the apothecary and land on which it is built shall revert to their mother.

"I do not wish in any way to influence the desires of my good wife, but I hope that she in turn shall exercise such measures that she shall deem wise to insure all our children an equitable part to the estate that she will leave.'

"I now address to all my children, grandchildren and to my well beloved Reine, my last adieu, from the depths of my heart and leave them as a last thought those beautiful words of Christ, 'Love thou one another.'

"Louis Adrienne De Montluzin (Du Sauzay.)''

Thirteen years after the date of the foregoing will, the instrument we are now to construe was written by Mrs. Montluzin. This instrument is in the following words:

"If the will made in my favor by my husband Louis Adrienne De Montluzin Du Sauzay becomes null at my death, I wish that the pharmacy remain, after the death of their father, to Joseph Alfred De Montluzin Du Sau-

zay and his brother Jean Rene Gabriel De Montluzin Du Sauzay, our sons and associates; that there be equal parts between the two brothers and equal divisions in the benefits and receipts of each day; that Rene have the same right therein as his brother Alfred; that nothing be sold without the consent of the two so interested; that the properties be divided; that the land and house bounded on one side by the Muller property and on the other side by Taconi, the end measuring seventy-two feet, more or less, and facing the sea, be for my daughter Corinne. I have given it to her, for a long time, on condition that she shall never sell same. If Corinne (Mrs. Benedict) shall die without issue, the property shall revert to her sister Jean Adrienne De Montluzin De Lappe; she only to have the use of same during her life, and at her death, that the property revert to her two daughters, Adrienne and Alice De Lappe.

"That the property on which we live, bounded by Mrs. Genin and Moreau, be divided among the five children, my heirs, Joseph Alfred, Louis Roger, Dr. and Rene Jean Gabriel De Montluzin Du Sauzay on condition that they shall not sell same without consent of the heirs in possession. If the said property be rented, that the rent be divided between the brothers and sisters; and if one of the said heirs should die, that his part should revert to his brothers and sisters.

"That the little house with the land bounded by Bowers on one side, and our land on the other, on Ullman avenue, be given to Jean.

"That the land measuring three hundred and fifty feet between Mendes and Reune De Montluzin Du Sauzay, known as the farm, be given to Rene Jean Gabriel De Montluzin Du Sauzay; but he cannot sell same and can have the use of same only for ten years.

"That the land between Second street and Taconi's be given to Jeanne and Corinne, my two daughters. That it be sold only on good terms and by the consent of the

two sisters. That my land on Main street be given to Roger Louis George De Montluzin Du Sauzay, former owner of said lot, measuring eight hundred feet. I leave to Roger the little house that he built on my land, facing on Second street. If he should die, that the said house shall revert to his sister Jeanne Adrienne De Montluzin Du .Sauzay. I desire at the death of any one of my children to which I give now and herein my property and land, that such parts shall revert at their death to their surviving brothers and sisters, if they are married and without children, that their share shall revert to their brothers and sisters. I give to Joseph Alfred four hundred feet of land on Carroll avenue, and to the children of August Fernand De Montluzin Du Sauzay four hundred feet. I desire that nothing be changed in the house which I occupy, that my children be united as during my life and that each child shall have the right to do what he desires on his part of the lands, with the exception that they shall not build anything that might impair the beauty of the place, unless they build in the back or rear by making a road leading to the beach. Such are my wishes written in perfect health of body and mind the 6th day of September, 1908.

"[Signed] Reine De Montluzin Du Sauzay."

The introductory clause of the alleged will of Mrs. De Montluzin discloses that she was making a record of her wishes, should her husband survive her, and she did not have in mind the contingency that she might survive him. If she happened to be the longest lived, there would be time enough to make her last will and testament. She probably had before her the husband's will, which in apt and clear language suggested a way by which a testamentary intent could be expressed.

If we must consider the circumstances surrounding the maker of a written instrument in order to discover the motive prompting the maker to write it, when this is done, this rather unusual document is made clear to us. The

husband of this woman had by his will made her the bene-
ficiary of all his possessions, except a certain business
and the house in which this business was conducted; and
this business was charged with an annuity to her, and was
excepted, because the sons to whom it was devised had
helped to create it.

Contemplating the possibility, and it may be what she
thought was a probability, that she would not survive
her generous spouse, she probably wrote the instrument
offered as her last will and testament to be taken by her
surviving life partner as her last words to him. It is
certain that the wishes expressed were to have effect dur-
ing the life of her husband, if at all. This is what her
words import, and there is nothing in the circumstances
surrounding her which authorizes us to believe that a
different meaning should be given the language employed
by her.

This is made the more manifest when it appears that
the property about which she is writing was the prop-
erty of her husband, and could not be devised by her
until he died, and not then unless his will was then in
existence. There is nothing ambiguous about the contin-
gency upon which her wishes are based—the nullity of
her husband's will. If she died first, the husband's will
would become null and void, because of the precedent
death of his devisee.

We think this paper does not bear on its face any of
the earmarks of a will, and we cannot enter the field of
conjecture and write into the instrument the idea that
she intended this paper to be treated as her will in case
she should survive her husband. This we believe must
be done before the instrument can be admitted to pro-
bate. The chancellor was of opinion that the writing
was the will of deceased, and for the reasons assigned
the cause is reversed.

*Reversed and remanded.*

Smith, C. J. (dissenting).

I am unable to agree with my Brethren that the instrument probated as the will of Mrs. De Montluzin was executed by her simply as a memorandum for the guidance of her husband in event he should survive her. I think, in executing the paper, she was complying with the request contained in the will of her husband, and intended thereby to execute an instrument which would have the effect, in so far as she had power so to do, of causing the property to be distributed after her death in accordance with the directions therein contained. If this is true, it is, of course, a will; and the fact that she was not then the owner of the property is immaterial, for the reason that a will speaks from the death of the testator, and not from the date of its execution.